UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY MARTIN,

                                   Plaintiff,

                                    v.

PERFORMANCE TRANS. INC., et al.,

                                   Defendants.
_____

DECISION AND ORDER

17-CV-6471L

Plaintiff Anthony Martin brings this action against five corporations and one individual, alleging claims of unlawful retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. When the complaint was filed, plaintiff was represented by counsel. On November 6, 2018, the Court granted counsel's motion to withdraw (Dkt. #29, #33). Since then, plaintiff has prosecuted the action *pro se*.

The five corporate defendants (collectively "corporate defendants") are Performance Trans. Inc. ("PTI"), Trucking Support Services LLC, First Global Express, LLC, Distribution Cooperative Network ("DCN"), and Velocity Tran. Inc. ("VTI"). The individual defendant is John Kasap.[1] Defendants, all of whom are represented by the same attorney, have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

On January 3, 2019, the Court issued an order (Dkt. #34) giving the parties notice that the Court was converting defendants' motion to a motion for summary judgment under Rule 56,

---

[1] It appears that Kasap's given name is Igor, but that he is also known as John. He is named as the complaint as John Kasap.

pursuant to Rule 12(d). In that order, the Court gave both sides an opportunity to submit additional materials in support of their respective positions, which they have done.

## BACKGROUND

The complaint alleges that plaintiff, an African-American male, was hired by defendants in May 2015 as a truck driver. Plaintiff alleges that all five corporate defendants were his employers, and that Kasap was his direct supervisor. Complaint ¶¶ 4-16, 21.

Plaintiff alleges that on December 14, 2015, he filed a charge of unlawful race discrimination against PTI with the New York State Division of Human Rights ("DHR"). Complaint ¶ 23. That DHR complaint does not appear to be in the record, so it is unclear what the exact nature of the charge was, but on May 9, 2016, the DHR issued a Determination and Order (Dkt. #26-6) dismissing the complaint.

The DHR stated that plaintiff had filed a complaint against PTI alleging claims of discrimination based on national origin, race/color, and disability. In dismissing the complaint, the DHR stated that it had found insufficient evidence to support plaintiff's allegations of unlawful discrimination based on his race, color, or national origin, and that the DHR's "[i]nvestigation also did not show that Complainant was denied any reasonable accommodation for his disability." *Id.* at 2. The DHR stated that its "[i]nvestigation showed that [plaintiff] had refused loads from [PTI] for reasons unrelated to any protected category, which impacted his word assignments and pay." *Id.*

The complaint in this action alleges that on December 16, 2015, during a private conversation with Kasap, Kasap said to plaintiff, "I cannot believe you filed a complaint with the

2

division of human rights. Now I have to hire two lawyers to fight your case." Complaint ¶ 26. Plaintiff also alleges that on December 18, he was informed by defendants via a text message that he would be going out on Sunday, December 20, for a December 21 delivery. Complaint ¶¶ 28, 29. Plaintiff further alleges that about eight minutes later, he received another text message stating, "NEVER MIND. PLANS ARE CANCELLED." Plaintiff states that he was not given any more work assignments, and that he was effectively terminated as of December 18, 2015. Complaint ¶¶ 31, 34.

On January 7, 2016, plaintiff filed another DHR complaint against PTI, alleging discrimination on account of his national origin and race/color, and unlawful retaliation for his having opposed unlawful discrimination. On May 11, 2017, the DHR issued a Determination and Order (Dkt. #26-6 at 4) dismissing the complaint. The DHR specifically found that "[a]lthough Complainant alleges that [PTI] terminated his employment because of the [DHR] complaint that was filed on December 14, 2015, the documentation shows that [PTI] made the decision to sever its business relationship with Complainant prior to that date due to requirements by its insurance carriers," and that the DHR's investigation did not show that PTI terminated plaintiff's employment in retaliation for his prior DHR complaint. *Id.*

Plaintiff filed a third DHR complaint on September 30, 2016, against the corporate defendants. On March 13, 2017, the DHR issued a Determination and Order (Dkt. #26-6 at 6) dismissing that complaint as well. It appears that, other than naming all five corporate defendants, plaintiff's September 2016 complaint was quite similar to the January 2016 complaint against PTI, because the substance of the DHR's March 2017 Decision and Order is virtually identical to its May 2017 Decision and Order.

3

Plaintiff filed this action on July 17, 2017. The complaint asserts a claim of unlawful retaliation under Title VII, and a claim of unlawful retaliation under § 1981. Both claims are apparently based on plaintiff's December 14, 2015 DHR complaint. *See* Complaint § 35. Plaintiff seeks compensatory damages for lost wages and benefits and for pain and suffering, punitive damages, and other costs.

## DISCUSSION

**I. Title VII Claim**

Defendants assert that plaintiff's Title VII claim should be dismissed because plaintiff has failed to show that the defendants meet the employee numerosity requirement of Title VII.

By its terms, Title VII applies only to employers who have fifteen or more employees. *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"); *see also Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 195 (2d Cir. 2005) ("An employer is not covered by the provisions of Title VII, unless the employer has at least fifteen employees"). That fifteen-employee threshold is a substantive element of a Title VII claim. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006) ("[T]he employee-numerosity requirement relates to the substantive adequacy of [plaintiff's claim]").

In support of their motion, defendants have submitted affidavits of several principals of the corporate defendants, stating that those defendants had no employees at all in 2014 or 2015, when the events giving rise to plaintiff's claims occurred. *See* Igor Kasap Aff. (Dkt. #26-8);

4

Irina Ignatovets Aff. (Dkt. #26-9); Robert Lefebvre Aff. (Dkt. #26-10). The gist of their statements is that the corporate defendants entered into contracts with independent contractors (including plaintiff), who were not defendants' employees. Plaintiff has not refuted those assertions.

Title VII generally "cover[s] 'employees,' not independent contractors." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000). Although "the statute defines an employee circularly as 'an individual employed by an employer'" *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e(f), the Supreme Court has set forth a non-exhaustive list of factors indicative of whether a plaintiff is (or was) an employee or an independent contractor. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989). In general, the analysis is based on the common law of agency. *See Salamon*, 514 F.3d at 226-27 (citing *Reid*). "Once a plaintiff is found to be an independent contractor and not an employee–whether on summary judgment or after a trial–the Title VII claim must fail." *Id.* at 226.

Not only has plaintiff failed to refute defendants' assertion that he was an independent contractor rather than an employee, the evidence in the record supports defendants' assertion. Defendants have submitted a copy of a "Delivery Vendor Agreement for Transportation Services" between DCN and plaintiff on October 15, 2015, setting forth the terms of their relationship, including plaintiff's provision of transportation services, compensation, and so on. The agreement specifically states that both parties agreed that plaintiff's relationship with DCN was "that of an independent contractor and [that] any and all services provided by [plaintiff] shall be provided in such capacity." (Dkt. #26-5 at 2). The agreement further states that plaintiff

5

would not "be considered [an] employee[ ] of DCN at any time, under any circumstances or for any purpose." *Id.*[2] In addition, plaintiff himself has submitted copies of checks that he received in December 2015, bearing the heading, "FOR INDEPENDENT CONTRACTOR SERVICES PROVIDED TO Velocity Trans. Inc." (Dkt. #43 at 7, 8.) Thus, there is no basis for a Title VII claim against the corporate defendants.

In addition, individuals are not subject to liability under Title VII. *See Cayemittes v. City of New York Dep't of Housing Pres. & Dev.*, 641 Fed.Appx. 60, 61-62 (2d Cir. 2016) ("Title VII does not provide for individual liability") (citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)); *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (stating that "individuals are not subject to liability under Title VII"). Plaintiff's Title VII claim against defendant Kasap must therefore be dismissed as well.

**II. Section 1981 Claim**

Section 1981 of Title 42 prohibits discrimination based on race in the making and enforcement of contracts. The statute applies to both public and private actors. *Juarez v. Northwestern Mut. Ins. Co., Inc.*, 69 F.Supp.3d 364, 367 (S.D.N.Y. 2014).

Unlike Title VII, § 1981 does not contain an employee numerosity requirement, *see Bland v. Booth*, 19-CV-63, 2019 WL 2296221, at *3 (E.D.N.C. May 3, 2019) (collecting cases), and individuals can, under some circumstances, be held liable under § 1981. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000); *see*, *e.g.*, *Brown v. CSX*

---

[2] The precise relationship among the five corporate defendants is not entirely clear from the record, but that is inconsequential, since there is no evidence that plaintiff had an employment relationship with *any* of them.

*Transp., Inc.*, No. 11-CV-999, 2015 WL 13745695, at *11-*12 (W.D.N.Y. Apr. 20, 2015), *Report and Recommendation adopted*, 155 F.Supp.3d 265 (W.D.N.Y. 2016).

In addition, courts have held that "Section 1981 protects not only individual[ ] [employees] but also independent contractors." *D'Ambrosio v. Bast Hatfield, Inc.*, No. 6:12-CV-1895, 2017 WL 6388889, at *7 (N.D.N.Y. Sept. 28, 2017) (citing *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 14 (1st Cir. 1999)), *aff'd*, 737 Fed.Appx. 44 (2d Cir. 2018); *see*, *e.g.*, *Yu v. N.Y.C. Hous. Dev. Corp.*, No. 07-CV-5541, 2011 WL 2326892, at *26 (S.D.N.Y. Mar. 16, 2011), *Report & Recommendation adopted*, 2011 WL 2183181 (S.D.N.Y. June 3, 2011), *aff'd*, 494 Fed.Appx. 122 (2d Cir. 2012). The Court will therefore address plaintiff's § 1981 retaliation claim on the merits.

Although § 1981 does not contain an explicit anti-retaliation provision, it has been construed to prohibit retaliation in the same manner as Title VII. *See University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 354-55 (2013) (stating that § 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it"). Retaliation claims under § 1981 are analyzed pursuant to the burden-shifting evidentiary framework applied in Title VII cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

"To establish a presumption of retaliation at the initial stage of [the] litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (quoting *Hicks*, 593 F.3d at 164) (additional internal

quotation marks omitted). The allegations in the complaint need only give "plausible support" to those prima facie requirements in the initial phase of the litigation. *Littlejohn*, 795 F.3d at 315.

At the same time, the Court must bear in mind that this is not a motion to dismiss under Rule 12(b)(6) or Rule 12(c). As stated, the Court has converted defendants' motion to a motion for summary judgment under Rule 56(c). In the case's current posture, the Court is not merely assessing the facial sufficiency of the complaint, but determining whether there exists any genuine issue for trial.

The standards on summary judgment motions are well established. The moving party must first present evidence showing the absence of a genuine dispute as to any material fact. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F.Supp.2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an

8

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In the case at bar, the record shows that plaintiff filed a complaint with the DHR on December 14, 2015, charging PTI with unlawful discrimination based on, *inter alia*, his race. *See* Dkt. #26-6. The filing of that complaint constituted protected activity. *See Burgos v. Works*, 13-CV-704, 2017 WL 2403305, at *10 (W.D.N.Y. June 2, 2017).

Plaintiff also alleges that he was terminated effective December 18, 2015, *i.e.*, four days after he filed his DHR complaint. Complaint ¶ 34. Although defendants have denied that allegation, *see* Defendants' Answer (Dkt. #14) ¶ 1, they do not dispute that plaintiff has not driven for defendants since then; in fact, they contend that he has not driven for defendants since December 11, 2015, *i.e.*, three days *before* plaintiff filed his DHR complaint. *See* Reply Aff. of Igor Kasap (Dkt. #36-1) ¶¶ 6, 7 (stating that plaintiff was "discharged" on December 11 and that he "never drove another vehicle for us" after that date). I will assume for purposes of defendants' motion, then, that plaintiff was subjected to an adverse action.

The second and fourth prongs of the *McDonnell Douglas* analysis present a closer call: whether defendants were aware of plaintiff's protected activity, and whether the adverse action was motivated by retaliation.

As to defendants' knowledge of plaintiff's protected activity, obviously at *some* point they must have become aware that plaintiff had filed a complaint with the DHR. But that is not enough; plaintiff must show that defendants knew about his protected activity *at the time* of the adverse action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (no causation where there was no indication that the employee's supervisor knew about the alleged protected

9

activity at the time of the adverse employment action); *Cephus v. Texas Health and Human Services Comm'n*, 146 F.Supp.3d 818, 835 (S.D.Tex. 2015) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct") (quoting *Chaney v. New Orleans Public Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

In the case at bar, the adverse action was defendants' decision to stop using plaintiff as a driver. The relevant questions, then, are when they made that decision, whether they knew about plaintiff's protected activity at that time, and if so, whether they were motivated by retaliatory animus.

In support of their motion, defendants have submitted evidence supporting their assertion that plaintiff's contract was terminated before he filed his first DHR complaint, not because of any protected activity on his part, but because of his uninsurability. But the evidence before the Court on that score is not "so one-sided that [defendants] must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

In an affidavit, Kasap states that he "terminated Mr. Martin's contract on December 11, 2015 because of his uninsurability." (Dkt. #36-1 ¶ 7.) Plaintiff's alleged uninsurability relates to a matter involving defendants' insurance company, concerning plaintiff.

Defendants have submitted copies of emails showing that on October 26, 2015, a representative of Trinity Insurance Services LLC ("Trinity") sent an email to VTI, asking VTI to fill out and return a "Driver Exclusion form" for plaintiff "[d]ue to him being an unacceptable driver in a claim ... ." (Dkt. #36-2 at 1.) It appears that this stemmed from plaintiff's having been involved in one or two previous vehicular accidents.

The email said that the insurance company needed the form returned by October 28, "or they could potentially cancel the policy for increased risk, per underwriting." *Id.* The attached form listed plaintiff's name, and stated, "No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle being operated by an excluded driver." *Id.* at 2.

An email from VTI to Trinity dated November 2, 2015 states that the author (who is not named) "sent over the information regarding Anthony Martin last week," and that because of "[t]he proof that the first accident was weather related, and that the one from June was not his fault, I can not exclude him. ... He is on the truck." (Dkt. #36-3 at 1.) That email was followed by a November 5 email from Trinity to VTI, stating that if Trinity did not receive the driver exclusion form by November 6, "the insurance company is going to process the cancellation for Velocity's policy." (Dkt. #36-4 at 1.)

In his affidavit, Kasap states that based on those communications with Trinity, he "terminated Mr. Martin's contract as an independent contractor on December 11, 2015 because of his uninsurability." (Dkt. #36-1 ¶ 7.) Defendants have not, however, explained why Kasap waited over a month after the notification from Trinity that the policy was in danger of cancellation, to make that decision.

Kasap also states that plaintiff "never drove another vehicle for us" after December 11, *id.*, but it is not evident from the record when plaintiff's last trip occurred, or whether it was after the due date for the driver exclusion form. For that matter, it is not clear how things turned out regarding the insurance company's request. There is nothing presently in the record showing whether defendants did submit the form, whether they told Trinity that they would no longer be using plaintiff as a driver, or what action they took concerning the matter.

11

Kasap further states that on December 8, 2015, he sent a text message to plaintiff, asking plaintiff to clean out his personal items from Truck #472, as another driver was going to take it out. (Dkt. #43 ¶ 6.) The relevant exhibit, however, seems to indicate that the text message may have been sent on December 14, 2015–the same day that plaintiff filed his first DHR complaint. (Dkt. #43 at 9.) In any event, the message is not, on its face, an unequivocal statement that plaintiff's contract was being terminated, or that his services would no longer be needed. All it says is that another driver would soon be taking out a certain truck (which plaintiff had apparently used in the past), so plaintiff should remove his personal belongings from that truck.

Kasap goes on to say that "[t]here was a mix-up with our dispatcher notifying Mr. Martin of a possible run after I had notified him that he was uninsurable. He never drove again after that time despite the fact that a week later a dispatcher had attempted to arrange a trip for him. We corrected that situation with the dispatcher and the plans for him to drive were cancelled. After December 11, 2015 Mr. Martin never drove another vehicle for us." (Dkt. #41 ¶ 7.) That appears to lend some credibility to plaintiff's allegation that on December 18, 2015, he was told that he would be taking out a truck on December 20, only to be informed minutes later, without elaboration or explanation, that those plans had been cancelled.

Based on this evidence, defendants would have the Court find as a matter of law that plaintiff's contract was terminated no later than December 11, 2015, three days before he filed his DHR complaint. But to make such a finding, the Court would have to credit Kasak's statements, and draw inferences in favor of the defendants, who are the moving parties. That is precisely what the Court may *not* do on a motion for summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005) ("district courts may not weigh evidence or assess

the credibility of witnesses at the summary judgment stage"); *Scott v. Coughlin*, 344 F.3d 282, 290-91 (2d Cir. 2003) (stating that even though a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment").

Nor can the Court simply ignore or discredit plaintiff's allegation that on December 16, 2015, two days after he filed his DHR complaint, Kasap said to him, "I cannot believe you filed a complaint with the division of human rights. Now I have to hire two lawyers to fight your case." Complaint ¶ 26; Plaintiff's Reply (Dkt. #43) at 4. For the purposes of the present motion, the Court must assume that allegation to be true. *See Cox v. Village of Pleasantville*, 271 F.Supp.3d 591, 612 (W.D.N.Y. 2017); *Montesano v. Westgate Nursing Home, Inc.*, 956 F.Supp.2d 417, 420 (W.D.N.Y. 2013).

If true, that allegation supports an inference of retaliatory animus. Where adverse action follows on the heels of protected activity, that temporal proximity can lend support to an inference of causation. *See*, *e.g.*, *Brandon v. Kinter*, __ F.3d __, 2019 WL 4263361 at *14 (2d Cir. Sept. 10, 2019).

The Second Circuit has also stated, in the context of a Title VII retaliation claim, that while timing "might be enough to establish a prima facie case, temporal proximity alone is not enough to establish pretext in this Circuit." *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). *See also Parron v. Herbert*, 768 Fed.Appx. 75, 77 (2d Cir. 2019) (district court properly granted summary judgment for employer on plaintiff's age discrimination claim where plaintiff did not produce any evidence demonstrating that employer's proffered reasons for his suspension reasons were pretextual, other than the timing of the suspension).

But plaintiff here has alleged more than just temporal proximity. He has alleged that Kasap explicitly expressed to plaintiff his displeasure with plaintiff having filed a DHR complaint, two days after plaintiff had done so, and two days before plaintiff's final, aborted work assignment. *See Brandon*, 2019 WL 4263361 at *14-*15 (defendants' alleged statements to plaintiff indicating retaliatory animus, combined with temporal proximity between protected activity and adverse acts, were sufficient to support a finding of retaliation).

As stated above, the DHR found that PTI made the decision to terminate plaintiff's employment prior to plaintiff's filing of his first DHR complaint, and that DHR's investigation did not show that PTI terminated plaintiff's employment in retaliation for his prior complaint. The Court of Appeals for the Second Circuit has held that DHR findings are admissible evidence, but that they are not binding on a district court deciding a motion for summary judgment. *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 232-33 (2d Cir. 2015). That principle is particularly apt here inasmuch as the DHR did not provide any explanation of its reasoning or evidentiary basis for its conclusion that PTI's decision stemmed from the matter concerning plaintiff's insurability. In short, this Court cannot simply adopt the DHR's findings and conclusions *in toto*. *See Raniola v. Bratton*, 243 F.3d 610, 623-24 (2d Cir. 2001) ("The Supreme Court has held that Congress, in enacting Title VII, generally intended to eliminate the binding effect of prior administrative findings and provide a *de novo* trial on Title VII claims") (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 795 (1986)).

For all these reasons, the Court concludes that plaintiff has presented enough evidence to demonstrate the existence of genuine issues of material fact with respect to his § 1981 retaliation claim to survive summary judgment. Defendants' motion is therefore denied, as to that claim.[3]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #26) is granted in part and denied in part. Defendants' motion for summary judgment dismissing plaintiff's first cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is granted, and that cause of action is dismissed. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 4, 2019.

---

[3] Concerning the claim against Kasap individually, the Second Circuit has stated that "personal liability under section 1981 must be predicated on the actor's personal involvement." *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). Defendants do not appear to contend that plaintiff's claim against Kasap fails on that score, nor do I see any basis for such an argument, since by his own admission, Kasap is the person who decided to terminate plaintiff's contract.